UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POP TOP CORP,<br><br>    Plaintiff,<br><br>v.<br><br>RAKUTEN KOBO INC.,<br><br>    Defendant. | Case No. 20-cv-04482-DMR<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Re: Dkt. No. 28 |

Plaintiff Pop Top Corp. ("Pop Top") filed this patent case against Defendant Rakuten Kobo Inc. ("Kobo"), the maker and distributor of the Kobo App, which is an eReader software application for reading eBooks. It alleges that the Kobo App infringes the sole claim of U.S. Patent No. 7,966,623 ("the '623 patent"), which relates to a method of highlighting services on web pages and other "internet documents." Kobo now moves for summary judgment of non-infringement. [Docket No. 28.] The court held a hearing on May 27, 2021. For the following reasons, the court grants the motion.

## I. BACKGROUND

### A. The '623 Patent

The '623 patent is titled "Method and Apparatus for Enabling Highlighter Services for Visitors to Web Pages." Compl. Ex. 1 ('623 Patent). It was issued by the United States Patent and Trademark Office ("USPTO") on June 21, 2011. The patent "relates to methods and systems that enable content providers and authors of web-based content to enable highlighter functionality on their web pages." '623 Patent at 1:16-19.

The '623 patent seeks to improve an internet user's ability "to retrieve previously searched for and discovered information." *Id*. at 1:28-30. It explains that a bookmark, which is "a mechanism or function enabling a user to save a copy of a uniform resource locator (URL)," is a

"common mechanism used for information retrieval." *Id*. at 1:33-36. According to the '623 patent, bookmarks have shortcomings. They "provide little, if any, explanation or context as to what it is about the associated document that may be significant," "become stale, and in some cases, expire over time," and "are a less than ideal mechanism for sharing information" because they require additional steps to access a document that may be "burdensome." *Id*. at 1:48-51, 1:60-61, 2:1-17. To address these shortcomings, the '623 patent discloses "[a] method for invoking a highlighting service to operate with a web page." It explains that "the basic function of the highlighting service is to enable a user to highlight an object (e.g., text, graphical images, or a combination) of the web page such that the highlighted portion(s) can easily be recalled at a later time and/or shared with other users." *Id*. at 2:57-58, 5:21-25. The '623 patent includes one claim, which is set forth further below.

### B. Alleged Infringement

The Kobo App is an eReader software application for reading eBooks. It is available across various operating systems. [Docket No. 28-10 (Hunter Decl., Nov. 12, 2020) ¶ 5.] The Kobo App includes 1) the software that is pre-installed on Kobo eReader devices; 2) the Kobo Books app for smartphones and tablets; and 3) the Kobo Desktop app for Mac and PC devices. In each case, the Kobo App is operable only when it is stored and installed on the user's device. *Id*. Kobo offers eBooks in its Kobo store. After a purchaser buys an eBook through the Kobo store, Kobo delivers the eBook from its server to the user's Kobo App. *Id*. at ¶ 6. Kobo provides its eBooks in the "ePub" format. *Id*. at ¶ 7.

Pop Top contends that the Kobo App, which includes a tool that allows a reader to highlight portions of the text, literally infringes Claim 1 of the '623 patent. [Docket No. 28-2 (Raskin Decl., Nov. 12, 2020) ¶ 2, Ex. 1 (Pop Top's Disclosure of Asserted Claims and Infringement Contentions, "Disclosures") at 2.] *See also* Compl. ¶¶ 14-16.

### C. Procedural History

Pop Top filed this lawsuit on July 7, 2020. At the initial case management conference, Kobo requested leave to file an early summary judgment motion of non-infringement. Pop Top did not object. The parties agreed to limit discovery to what was needed by Pop Top to oppose the

1 early summary judgment motion. [Docket No. 21 (Joint CMC Statement) 2, 3.] They proposed an October 21, 2020 deadline by which Pop Top would serve its Patent Local Rules 3-1 and 3-2 disclosures and document production, as well as a briefing schedule for the motion. *Id*. at 5-6. The court granted Kobo leave to file an early summary judgment motion of non-infringement and adopted the proposed schedule. [Docket No. 26.] Kobo timely filed the instant motion.

## II. LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Patent infringement is a two step inquiry." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005). First, the court "construe[s] the asserted claim"; second, the court "determine[s] whether the accused product or process contains each limitation of the

3

properly construed claims, either literally or by a substantial equivalent." *Id.* at 1356-57. The first step is a question of law, while the second step is a question of fact. *Id.* at 1357. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). The court can resolve the issue of infringement on summary judgment "only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004) (quoting *Gart v. Logitech, Inc*., 254 F.3d 1334, 1339 (Fed. Cir. 2001)).

## III. DISCUSSION

Kobo argues that it is entitled to summary judgment of non-infringement of the '623 patent because Pop Top cannot establish that the Kobo App meets any of the following four claim limitations: 1) "the internet document includes code for invoking a highlighting service to operate with the internet document"; 2) "the highlighting service hosted at a highlighting service server which is different from the content server hosting the internet document"; 3) "responsive to a user selecting the user interface object in the client web browser, the client web browser communicating a request to the highlighting service server to invoke the highlighting service"; and 4) "responsive to the request to invoke the highlighting service, the highlighting service server enabling the highlighting service for the internet document[.]" *Id*. at 10-11 (quoting '623 Patent at 8:25-40). *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system."). Kobo states that no claim construction is necessary to evaluate non-infringement. Mot. 11.[1]

---

[1] Kobo goes on to offer that the only term that arguably could require construction is "highlighting service" because "its functionality is important to understanding the scope of the claims." It proposes construing "highlighting service" as "a functionality that enables a user to highlight a portion of a document." Mot. 11.

4

Pop Top opposes. It is silent on whether the court must construe any claim terms in order to decide this motion.[2] Instead, it argues that the four purported claim limitations discussed in Kobo's motion "are, in fact, not present in claim 1 or the '623 patent" and are "made up out of whole cloth." Opp'n 1. It asserts that summary judgment must be denied because there are numerous material disputes as to the requirements of the claim. *Id*. at 2.[3]

Claim 1 sets forth a specific method to provide the ability to highlight an "internet document," and describes a sequence of steps. It states:

> 1. A computer-implemented method, comprising:
>
> at a content server, receiving a request for an internet document from a client web browser;
>
> serving the internet document from the content server to the client web browser, wherein the internet document includes code for invoking a highlighting service to operate with the internet document, the highlighting service hosted at a highlighting service server which is different than the content server hosting the internet document and the code causing a user interface object for invoking the highlighting service to be displayed by the client web browser in connection with the internet document;
>
> responsive to a user selecting the user interface object in the client web browser, the client web browser communicating a request to the highlighting service server to invoke the highlighting service;
>
> responsive to the request to invoke the highlighting service, the highlighting service server enabling the highlighting service for the internet document;
>
> responsive to the highlighting service being enabled for the internet document, displaying in the client web browser tools for highlighting text and objects of the internet document, said tools represented in a highlighter tool panel in the client web browser and said tools configured to provide the user with a selection of controls enabling

---

[2] The court interprets Pop Top's silence as agreement with Kobo that the court need not construe any terms in order to rule on Kobo's motion.

[3] Pop Top also initially argued that summary judgment should be denied because it is "entitled to explore infringement of claim 1 on a complete record after fact and expert discovery," and requested discovery under Rule 56(d). Opp'n 15. That rule provides that if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify [the party's] opposition," the trial court may deny the motion for summary judgment, continue the hearing to allow for such discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). At the hearing, Pop Top withdrew its Rule 56(d) request after admitting that it had conducted no discovery to date.

5

various features and functions of the highlighting service; and

responsive to the user highlighting an object in the internet document, communicating the highlighted object or portions thereof to the highlighting service server for storage in such a manner as to be associated with the user who generated the highlight.

'623 Patent at 8:21-53.

As noted, Kobo moves for summary judgment of non-infringement by arguing that four limitations in claim 1 are not found in the Kobo App. The first is that the claim requires an "internet document" that "includes code for invoking a highlighting service to operate with the internet document." '623 Patent at 8:25-27. According to its infringement contentions, Pop Top contends that "internet document" means "[a] web based document opened with a browser." Using this definition, Pop Top asserts that an eBook delivered to the Kobo App constitutes an "internet document." Pop Top's Disclosures at 4 ("[t]he eBook that Kobo serves is an internet document, served from the content server to a client device."). Kobo argues that even if the court were to adopt Pop Top's contention that an eBook delivered to the Kobo App is an "internet document" within the meaning of Claim 1,[4] eBooks do not "include[ ] code for invoking a highlighting service to operate with the internet document[.]" Mot. 11-14.

Pop Top did not submit evidence in opposition to the motion, and utterly fails to raise any dispute of material fact with respect to Kobo's first argument. As an initial matter, Pop Top does not identify "code for invoking a highlighting service" in the "internet document." Its infringement contentions are vague on this point. They generally state that "eBooks served by Kobo that are highlightable include code. Regardless of other functionalities that the code may support, an important aspect is that the code invokes the highlighting service. In the absence of the code included with the eBook, the highlighting service is non-operative on the eBook." Pop Top's Disclosures at 5. Pop Top's failure to pinpoint specific "code for invoking a highlighting service" in the "internet document" is telling, for it had ample opportunity to review the relevant source code. The record establishes that prior to Pop Top serving its infringement contentions,

---

[4] Kobo disputes that eBooks used with the Kobo App are "internet documents," as that term is used in the claim. However, neither party asks the court to construe the term "internet document" and resolution of that dispute is not necessary to decide this motion.

6

Kobo produced a copy of a complete eBook file, including source code, for a book identified in the complaint. [Docket No. 35-1 (Raskin Decl., Feb. 4, 2021) ¶¶ 8-9, Exs. F, G.] Kobo also made a second book available for inspection. Raskin Decl. ¶ 8. At the hearing, Pop Top confirmed that it did not make use of the opportunity to inspect the second book.

Moreover, Kobo submitted affirmative unrebutted evidence that its eBooks do not include "code for invoking a highlighting service." As noted, eBooks are delivered to the Kobo App in ePub format. Hunter Decl. ¶ 7. An ePub file is a Zip archive that includes at least one document with content for the eBook and an OPF file which provides information such as identification of content, navigational information, and publication-level metadata. *Id*. An ePub file may also include scripts, such as a Javascript file. *Id*. Trevor Hunter, Kobo's Chief Technology Officer, states "[t]he eBooks provided through the Kobo Store include a legacy Javascript file (kobo.js) . . . , which contains functions relating to the page count of a book, pagination, the current progress in the book, font size and night reading," and that "[n]one of these functions relate to any highlighting capabilities of the Kobo App." *Id*. at ¶¶ 2, 36. Hunter states that "highlighting functionality is based entirely on code that is included in the Kobo App itself stored on a user's device," and "[t]he Kobo eBooks do not include any code for invoking a highlighting service." *Id*. at ¶¶ 9, 15.[5]

In opposition, Pop Top engages in distraction. It inaccurately characterizes Kobo's argument as requiring that "the served internet document . . . include *all* code necessary to highlight the served internet document." *Id*. at 9-10 (emphasis added). According to Pop Top,

---

[5] On the relevant page of Pop Top's infringement contentions, Pop Top identifies a "js" folder within an ePub-formatted book that contains Javascript code. Pop Top's Disclosures at 5. However, according to Kobo's unrebutted expert, Nathaniel Polish, Ph.D., "this Javascript file contains no functionality enabling a user to highlight a portion of a document," and Pop Top does not identify any such functionality in its infringement contentions. [*See* Docket No. 27-11 (Polish Decl., Nov. 12, 2020) ¶ 56.] Additionally, Hunter and Polish each performed "test cases" in which they removed the kobo.js file from two different eBooks and then loaded the modified eBooks onto the Kobo eReader, the Kobo App for iOS and Android, and the Kobo Desktop app for Mac and PCs. Despite stripping the kobo.js file from the eBooks, the eBooks and their highlighting features were still fully functional. Hunter Decl. ¶ 38; Polish Decl. ¶ 59. According to Kobo, this demonstrates that the kobo.js file does not contain "code for invoking a highlighting service to operate with the internet document." Pop Top does not offer any evidence to the contrary.

7

"[t]he code included in the internet document . . . need only lead to the invocation of the highlighting service. The claim language makes express that the code is for invocation and not the code to do the highlighting[.]" *Id*. at 11.

Pop Top blatantly misconstrues Kobo's position. Kobo does not contend that the internet document must "include *all* code necessary to highlight" the document. Rather, Kobo asserts that the claim requires the internet document to "include[ ] code for invoking a highlighting service," and it presents evidence that the eBooks for the Kobo App do not include any such code. According to Kobo, the Kobo App's "highlighting functionality is based entirely on code that is included in the Kobo App itself," and not in the eBooks. *See* Hunter Decl. ¶ 9; Polish Decl. ¶¶ 58, 59. Importantly, Pop Top offers no evidence to dispute Kobo's evidence on this point; in fact, it offers no evidence whatsoever that the eBooks for the Kobo App include "code for invoking a highlighting service," despite being in possession of a complete eBook file. *See* Raskin Decl. ¶¶ 8-9.

Pop Top also includes a "claim chart" in its opposition brief that purportedly "maps" claim 1 to the statements in Hunter's declaration regarding the operation of the Kobo App. Opp'n 13-15. According to the chart, "[c]ode identifying the eBook as a Reflowable ePub file is 'code for invoking a highlighting service.'" *Id*. at 14. For starters, Pop Top's so-called "claim chart" is entirely unsupported by evidence. Moreover, Pop Top did not disclose this theory in its infringement contentions. The local rules of the Northern District of California require parties to define their theories of patent infringement (and invalidity) early on in the course of litigation, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006), and permit parties to amend their infringement contentions "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. "In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C. 11-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) (citation omitted). The Patent Local Rules provide a non-exhaustive list of circumstances that support a finding of good cause, provided there is no prejudice to the non-moving party. These include "(a) claim

8

construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6.

Pop Top makes no effort to demonstrate good cause to amend its infringement contentions to disclose the theory that "[c]ode identifying the eBook as a Reflowable ePub file is 'code for invoking a highlighting service.'" Pop Top was on notice of Kobo's position on non-infringement, including its position that the eBooks do not include code for invoking a highlighting service, well before it served its infringement contentions in October 2020. Raskin Decl. ¶¶ 3-9, 12, 14. Accordingly, there is no reason that Pop Top could not have disclosed this theory in its infringement contentions. It may not rely on the new theory now. In any event, Pop Top's new theory does not demonstrate that the Kobo App meets the limitation that "the internet document includes code for invoking a highlighting service to operate with the internet document." The "code for invoking a highlighting service" must be "include[ed]" in "the internet document." '623 Patent at 8:25-27. Pop Top does not identify any "code identifying the eBook as a Reflowable ePub file" that is contained within the eBooks for the Kobo App, and Kobo presents unrebutted evidence that the code that identifies the eBook as a Reflowable ePub file resides within the Kobo App itself. *See* Hunter Decl. ¶¶ 18-19 (under seal).

At the hearing, Pop Top offered yet another new theory of how the eBooks include "code for invoking a highlighting service," citing portions of Hunter's declaration that discuss Kobo's source code for the highlighting functionality, including certain commands to the content viewer. *See* Hunter Decl. ¶¶ 21-24. According to Pop Top, this series of commands to the content viewer is triggered by the user of the eBook. Pop Top pointed to paragraph 24, in which Hunter refers to a specific function that sends a "command to the content viewer in order to display the highlighting controls" and sets forth the corresponding source code. *See id*. at ¶ 24. According to Pop Top, Hunter "admits" in paragraph 24 that to display the highlighting controls, "a command is sent from the eBook to the content viewer." Therefore, Pop Top argues, "that is code for causing a user interface object for invoking a highlighter service" within the eBook. [Docket No. 49 (Hr'g

9

Tr.) 7).]

Once again, the court cannot consider Pop Top's new argument because it does not appear in its infringement contentions. It doesn't even appear in Pop Top's opposition brief. At any rate, the argument has no merit. The relevant portion of paragraph 24 of the Hunter Declaration states that "[t]he showHighlightMenu() function sends a 'highlight?highlight' command to the content viewer in order to display the highlighting controls[.]" Contrary to Pop Top's assertion, the declaration does not state that the eBook itself contains source code that invokes the highlighting service by sending a command to the content viewer.

Other paragraphs in Hunter's declaration contradict Pop Top's reading of paragraph 24 as describing a command sent from the eBook to the content viewer that is "code for causing a user interface object for invoking a highlighter service" within the eBook. *See* Tr. 7. For example, Hunter states in paragraph 9 that the Kobo App's "highlighting functionality is based entirely on code that is included in the Kobo App itself stored on a user's device" and "[t]he Kobo eBooks do not include any code for invoking a highlighting service[.]" Hunter Decl. ¶¶ 9(a), 9(b). In a later paragraph introducing his discussion of the "source code for highlighting functionality," Hunter states, "when a user selects text to be highlighted and activates the Highlight button, the Kobo App is programmed to highlight the selected text." He continues: "[a]s I explain below with reference to the source code for the iOS version of the Kobo App, the Kobo App does this by executing functionality *that is located in the Kobo App itself*, which is stored on the user's local device." *Id*. at ¶ 15 (emphasis added). Hunter then describes the three categories of source code relevant to the highlighting functionality, including code that "[t]riggers the presentation of the highlighting controls." Each category of code resides within the Kobo App. *Id*. at ¶¶ 16, 20. Pop Top offers no evidence to contradict these portions of Hunter's declaration, and no evidence whatsoever to support its interpretation of paragraph 24.

The Federal Circuit instructs that "[a] party may not overcome a grant of summary judgment by merely offering conclusory statements." *TechSearch*, 286 F.3d at 1371 (quotation marks and citation omitted). "[G]eneral assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden [on summary judgment]," and a

10

party opposing summary judgment of non-infringement "must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant." *Id*. at 1372 (citations omitted). Here, Pop Top offers conclusory statements rather than facts to counter Kobo's evidence that eBooks do not "include[ ] code for invoking a highlighting service to operate with the internet document." Consequently, Pop Top has not satisfied its burden of demonstrating a dispute of fact on whether the Kobo App meets that particular limitation. Infringement must be shown literally or equivalently for each limitation. Pop Top's failure to establish a dispute of fact regarding Kobo's first identified limitation is fatal to its infringement claim. The court need not reach Kobo's arguments on the other three limitations. Kobo is entitled to summary judgment of non-infringement.

## IV. CONCLUSION

For the foregoing reasons, Kobo's motion for summary judgment is granted. At the hearing, both parties acknowledged that a ruling in Kobo's favor would determine the entire case. Therefore, the Clerk shall close the case and judgment shall be entered in Kobo's favor.

**IT IS SO ORDERED.**

Dated: June 25, 2021



Donna M. Ryu
United States Magistrate Judge

11