UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POP TOP CORP,<br><br>  Plaintiff,<br><br>  v.<br><br>RAKUTEN KOBO INC.,<br><br>  Defendant. | Case No. 20-cv-04482-DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR CONTEMPT AND TO AMEND JUDGMENT AND MOTION TO ASSIGN PATENTS; ORDER ON SEALING MOTION**<br><br>Re: Dkt. Nos. 106, 107, 108 |

  In March 2022, the court awarded Defendant Rakuten Kobo Inc. ("Kobo") attorneys' fees under the Patent Act, 35 U.S.C. § 285, and ordered Plaintiff Pop Top Corp. ("Pop Top") to pay the amount awarded within 30 days. Pop Top did not do so. Kobo now moves to amend the judgment to add Pop Top's principal, Rohit Chandra, as a judgment debtor and to hold Pop Top and Chandra in civil contempt for their failure to comply with the March 2022 Order. [Docket No. 107.] It filed an accompanying administrative motion to consider whether another party's material should be sealed. [Docket No. 106.] Kobo also moves for an order assigning Chandra's patents in partial satisfaction of the March 2022 Order. [Docket No. 108.]

  The court held a hearing on March 14, 2024 at which Chandra appeared. Because Kobo's motion seeks to add Chandra as a new party to the judgment, the court may not grant the motion without obtaining Chandra's consent pursuant to 28 U.S.C. § 636(c) due to its dispositive effect. *See Columbia Record Productions v. Hot Wax Records, Inc.*, 966 F.2d 515, 516-17 (9th Cir. 1992) (holding that absent consent, magistrate judge lacks authority to render a post-judgment decision that has a dispositive effect on the parties). The court ordered Chandra to file a consent or declination to magistrate judge jurisdiction by March 18, 2024. [Docket No. 118.] Chandra

timely filed a declination. [Docket No. 119.] Accordingly, the court issues this Report and Recommendation and reassigns this case to a district judge for final disposition, with the recommendation that Kobo's motion to amend the judgment be granted and that Chandra be added as a judgment debtor. The court further recommends that Kobo's motion to hold Pop Top and Chandra in contempt be denied as moot and the motion to assign Chandra's patents be denied without prejudice.[1] The court grants in part and denies in part Kobo's administrative motion to consider whether another party's material should be sealed.

## I.  BACKGROUND

A detailed history of this litigation is set forth in the January 2022 order on attorneys' fees. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-CV-04482-DMR, 2022 WL 267407, at *1-3 (N.D. Cal. Jan. 28, 2022). In short, Pop Top sued Kobo for patent infringement in July 2020, alleging that the Kobo App, an eReader software application for reading eBooks, infringed U.S. Patent No. 7,966,623 ("the '623 patent"). The court granted summary judgment of non-infringement in June 2021. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-CV-04482-DMR, 2021 WL 2633479, at *7 (N.D. Cal. June 25, 2021), *aff'd*, No. 2021-2174, 2022 WL 1397867 (Fed. Cir. May 4, 2022). In January 2022, the court found that Kobo was entitled to attorneys' fees under the Patent Act. On March 28, 2022, the court awarded Kobo $274,721.43 in attorneys' fees and ordered Pop Top to pay the amount awarded to Kobo within 30 days. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-CV-04482-DMR, 2022 WL 901547, at *4 (N.D. Cal. Mar. 28, 2022), *aff'd*, No. 2022-1688, 2023 WL 2783178 (Fed. Cir. Apr. 5, 2023) ("March 2022 Order"). Pop Top appealed the summary judgment order. [*See* Docket No. 67.] The Federal Circuit affirmed.[2] To date, Pop Top has not

---

[1] Both Pop Top and Kobo consented to magistrate judge jurisdiction early in the case and the undersigned presided over the case through entry of judgment and in connection with Kobo's motion for attorneys' fees. Per General Order 42, the court typically would not prepare a report and recommendation on a dispositive matter in a full consent case but does so in this instance given its unusual posture, where Kobo seeks to add a new party to the case who has declined magistrate judge jurisdiction.

[2] The Federal Circuit also found that Pop Top's appeal of the court's summary judgment order was frivolous. It awarded Kobo $107,748.27 in sanctions and held Pop Top and its counsel jointly and severally liable for the sanctions. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 2021-2174, 2022 WL 2751662, at *3 (Fed. Cir. July 14, 2022). Payment of the Federal Circuit's fee award is not at issue here.

paid any portion of the fee award.

Kobo now contends that the March 2022 Order should be amended to add Chandra as an additional judgment debtor because he is Pop Top's alter ego. Kobo also seeks civil contempt sanctions for Pop Top and Chandra's failure to pay the attorneys' fees awarded in compliance with the March 2022 Order and moves to assign Chandra's patents in partial satisfaction of the March 2022 Order.

## II.     MOTION TO AMEND THE JUDGMENT AND TO HOLD POP TOP AND CHANDRA IN CIVIL CONTEMPT

### A.     Amending the Judgment

#### 1.     Legal Standard

Federal Rule of Civil Procedure 69(a) governs execution of money judgments and "empowers federal courts to rely on state law to add judgment-debtors." *In re Levander*, 180 F.3d 1114, 1120-21 (9th Cir. 1999).

Under California Code of Civil Procedure section 187, which grants courts "all the means necessary to carry [their jurisdiction] into effect," courts have "the authority to amend a judgment to add additional judgment debtors." *In re Levander*, 180 F.3d at 1121 (citing *Issa v. Alzammar*, 38 Cal. App. 4th Supp. 1, 4 (1995)). "Section 187 is premised on the notion that the amendment is merely inserting the correct name of the real defendant, such that adding a party to a judgment after the fact does not present due process concerns." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (cleaned up). The party seeking amendment to add an additional judgment debtor must establish by the preponderance of the evidence "(1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Id.* at 1148 (emphasis in original) (cleaned up); *Wollersheim v. Church of Scientology*, 69 Cal. App. 4th 1012, 1014 (1999) (discussing applicable evidentiary standard). As section 187 "contemplates a noticed motion," a court is not required to hold an evidentiary hearing on a motion to amend the judgment. *See Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal. App. 4th 1, 9

3

(2014). "California allows motions to add alter-ego judgment debtors within a reasonable period of time." *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998).

### 2. Discussion

The court first considers whether Chandra is Pop Top's alter ego and then turns to whether Chandra controlled the litigation.

#### a. Chandra is the Alter Ego of Pop Top

"Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person." *Katzir's Floor*, 394 F.3d at 1149 (emphasis in original) (quoting *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994)). "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Id*. "The alter ego doctrine applies where (1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985). "Both factors must be found for alter ego liability to be imposed." *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597 (N.D. Cal. 2012) (citation omitted).

#### i. Unity of Interest

"Many factors may inform a court's determination regarding whether there is a sufficient unity of interest and ownership to satisfy the first prong of the alter ego analysis, but California courts consider three factors especially 'critical': (1) 'commingling of assets,' (2) 'disregard of corporate formalities,' and (3) 'inadequate capitalization.'" *Carlson Produce, LLC v. Clapper*, No. 18-CV-07195-VKD, 2022 WL 2905157, at *3 (N.D. Cal. July 22, 2022) (quoting *Tomaselli*, 25 Cal. App. 4th at 1285, and *Katzir's Floor*, 394 F.3d at 1149). Other factors include "the treatment by an individual of the assets of the corporation as his own," "the failure to maintain minutes or adequate corporate records," "sole ownership of all of the stock in a corporation by one individual or the members of a family," "the use of the same office or business location," "the employment of the same employees and/or attorney," "the failure to maintain arm's length

4

1  relationships among related entities," and "the diversion of assets from a corporation by or to a
2  stockholder or other person or entity." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12
3  (2010).
4        Kobo has submitted ample, uncontroverted evidence that Chandra and Pop Top share a
5  unity of interest and ownership. Chandra is an entrepreneur who prosecutes patents in his own
6  name. [Docket No. 106-4 (Raskin Decl. Dec. 1, 2023) ¶ 2, Ex. A (Chandra Dep.) 71-73, 158.] He
7  obtained registration of the '623 patent in his own name in June 2011. Compl. Ex. 1. On July 1,
8  2020, Chandra assigned the '623 patent from himself to Pop Top. The same day, Chandra and
9  Pop Top executed an "Engagement Agreement" under which Chandra and Pop Top retained
10  counsel "with respect to assertion and monetization of" eight patents, including the '623 patent.
11  Chandra Dep. Exs. 7, 9. Pop Top filed the complaint against Kobo shortly thereafter.
12        Chandra is and always has been Pop Top's sole shareholder, officer, and director with sole
13  and complete decision-making authority. Chandra Dep. 283, Dep. Ex. 6 at 3. *See Zoran*, 185 Cal.
14  App. 4th at 811 ("sole ownership of all of the stock in a corporation by one individual" supports
15  alter ego relationship). Pop Top's registered business address is Chandra's personal residence, a
16  single-family home in Sunnyvale, California. Chandra Dep. 66-70. There is no written agreement
17  between Chandra and Pop Top related to the use of space in Chandra's home and there are no
18  utilities in Pop Top's name. *Id*. at 69-71. *See Zoran*, 185 Cal. App. 4th at 811 ("the use of the
19  same office or business location" supports alter ego relationship).
20        Aside from using Pop Top as a vehicle to monetize Chandra's patents, Pop Top has no
21  business and no revenue. *Id*. at 148. Pop Top has never licensed any patents, manufactured or
22  sold any products, or sold and supplied any services. *Id*. *See Zoran*, 185 Cal. App. 4th at 811
23  ("the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the
24  business of an individual" supports alter ego relationship). Chandra is Pop Top's sole
25  "employee." *Id*. at 283; Dep. Ex. 6 at 3; Dep. Ex. 11 (Dec. 18, 2012 written employment offer
26  from Pop Top to Chandra). Chandra employed and shared legal counsel with Pop Top. Dep. Ex.
27  9. *See Zoran*, 185 Cal. App. 4th at 811 ("the employment of the same employees and/or attorney"
28  supports alter ego relationship).

The evidence indicates that Chandra commingled his assets with Pop Top's assets. Chandra maintained two bank accounts in Pop Top's name at Wells Fargo, a checking account and a savings account. Chandra was the only authorized signatory on both accounts. Chandra Dep. 212-14, 215-16. Kobo submits evidence that on several occasions, Chandra transferred various amounts from his personal account to Pop Top's account as purported "loans" and then transferred funds back to his personal account as "reimbursements." *Id*. at 223, 231-33, Dep. Ex. 21 at POPTOP00247, 259, 273. Chandra regularly used funds in Pop Top's accounts as to pay for his meals and other expenses, such as gas. Chandra Dep. 218-23; *see generally* Dep. Ex. 21. Chandra testified that these charges were for business expenses but could not recall the business reasons for the expenses. Chandra Dep. 222. He admitted that Pop Top has no accounting system to track expenses other than "bank statements." *Id*. at 13-15.

Kobo submits evidence that to the extent that Pop Top obtained outside investment capital, Chandra immediately diverted such funds to his personal bank account. For example, on March 13, 2020, Chandra, on Pop Top's behalf, executed a "Non-Recourse Financing for Monetization of Patent Portfolio" with Alita9 Ventures, LLC. Dep. Ex. 10. Pursuant to that agreement, Pop Top agreed to pay a portion of the proceeds from its efforts to monetize Chandra's patent portfolio in exchange for $25,000. *Id*. On March 17, 2020, $25,000 was deposited into Pop Top's savings account. Dep. Ex. 21 at POPTOP00332. On June 8, 2020, Chandra transferred $10,000 from Pop Top's savings account to his personal account. *Id*. at POPTOP00348. On June 11, 2020, Chandra transferred another $10,000 from Pop Top's savings account to his personal account, leaving only $150.08 in Pop Top's Savings Account. *Id*. at POPTOP00348). *See Zoran*, 185 Cal. App. 4th at 812 ("the diversion of assets from a corporation by or to a stockholder or other person or entity" supports alter ego relationship). Chandra closed Pop Top's savings account on January 28, 2022. *Id*. at POPTOP00464.

Kobo also submits evidence that Chandra has failed to observe and comply with corporate and legal formalities in the operation of Pop Top. Pop Top has never held any formal corporate meetings, other than that Chandra "meets with himself" every day and meets with the accountant "annually." Chandra Dep. 53; Dep. Ex. 6 at 3. Other than initial incorporation papers, Pop Top

6

1  has no corporate minutes or resolutions, Chandra Dep. 52-54, and its only accounting records are
2  bank statements and tax returns.  *Id*. at 13-15.
3        Finally, Kobo submits evidence that supports finding that Chandra did not adequately
4  capitalize Pop Top.  "A corporation is adequately capitalized when it 'reasonably' has funds 'to
5  enable [the corporation] to operate its business and pay its debts as they mature.'"  *Carlson*
6  *Produce*, 2022 WL 2905157, at *4 (alteration in original) (quoting *Laborers Clean-Up Contract*
7  *Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc*., 736 F.2d 516, 524 (9th Cir. 1984)).  According
8  to Kobo, Chandra did not produce any evidence that he provided any initial or subsequent
9  investment capital to Pop Top and resisted Kobo's attempts to obtain bank records going back to
10 2012, when Pop Top was incorporated.  Mot. 12 n.3.  [*See* Docket No. 104 (Chandra's Motion to
11 Quash Subpoenas).]  Chandra admitted that Pop Top has never paid him any salary or wages
12 because it "did not have the revenues" to do so.  Chandra Dep. 174-75.  According to Chandra,
13 Pop Top owes him an estimated $1.5-2.5 million in deferred wages pursuant to the employment
14 agreement that Pop Top and Chandra executed in December 2012 that set his "monthly salary of
15 $12,500."  *Id*. at 177-78; Dep. Ex. 11.  Additionally, Chandra contends that he is owed either "in
16 excess of $175,000" or "$200,000, give or take" in a purported "loan."  Chandra Dep. 179; Dep.
17 Ex. 6 at 4.  This evidence supports finding that Chandra failed to properly capitalize Pop Top.  *See*
18 *Laborers Clean-Up*, 736 F.2d at 524 ("Although [defendant] may have had some meager
19 nonliquid assets at its inception, the failure to infuse it with any working capital in the form of
20 cash or other liquid assets rendered its initial capitalization inadequate.").
21       Pop Top does not dispute any of the foregoing evidence or submit any evidence in rebuttal.
22 Instead, it argues that "[t]here is no unity of interest between Pop Top and Mr. Chandra" and that
23 "Pop Top is like any other sole shareholder corporation."  Opp'n 3.  It further argues that "Pop
24 Top has its own bank accounts, and files its own taxes," and "has maintained its corporate
25 existence."  *Id*.  According to Pop Top, "[t]his is not a case where the shareholder has diverted
26 profits to hinder or delay creditors."  *Id*.  It does not address any of the alter ego factors with
27 specificity or address the evidentiary record but insists that "[d]ifficulty in enforcing a judgment or
28 collecting a debt does not satisfy" the standard to apply the alter ego doctrine.  *Id*. at 3-4.

7

To be sure, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor*, 394 F.3d at 1149. However, the record goes far beyond "sole ownership and control." Having reviewed the undisputed factual record and having considered numerous factors which bear on the alter ego analysis, including the "critical" factors of commingling of assets, failure to observe and comply with corporate formalities, and inadequate capitalization, the court finds that Kobo has shown that Chandra and Pop Top share a unity of interest and ownership.

### ii. Inequitable Result

To hold Chandra personally liable for Pop Top's conduct, Kobo must also show that "an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus.*, 772 F.2d at 545; *Zoran*, 185 Cal. App. 4th at 815 (moving party is "obligated to demonstrate that an injustice would result from the recognition of separate corporate identities." (quotation and citation omitted)). "An inequitable result may follow if the complained of acts are treated as those of an undercapitalized corporation." *RRX Indus.*, 772 F.2d at 546. "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). However, a finding of bad faith is not a prerequisite. *See RRX Indus.*, 772 F.2d at 546. "Insolvency or inadequate capitalization may satisfy this standard when 'a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Carlson Produce*, 2022 WL 2905157, at *5 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017)).

As discussed above, Pop Top appears to have been significantly undercapitalized and Chandra operates Pop Top "with little or no assets." *See Perfect 10*, 847 F.3d at 678 (affirming denial of motion to amend to add alter ego judgment debtor; explaining that "[n]othing in the record suggests that [plaintiff] was so undercapitalized that it could not meet its reasonably expected debts, and particularly in light of [its] ability to satisfy past judgments against it, there is no evidence of bad faith. Indeed, this is not a case where a sole shareholder operated a company

8

1  with little or no assets"). As a result, Kobo is unable to collect the amount awarded for attorneys'
2  fees. The court concludes that Chandra's undercapitalization of Pop Top has led to this
3  inequitable result. *See Carlson Produce*, 2022 WL 2905157, at *5 (holding that
4  undercapitalization of judgment debtor led to inequitable result of plaintiff being unable to collect
5  its judgment).

### b.     Chandra Controlled the Underlying Litigation

Under California law, the proposed judgment debtor "had to have controlled the litigation such that it was 'virtually represented'" in order to protect that party's due process rights. *Katzir's Floor*, 394 F.3d at 1149. "A prior judgment against a corporation can be made individually binding on a person associated with the corporation only if the individual to be charged . . . had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." *Id.* at 1150 (ellipses in original; quotation marks and citation omitted).

"Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. SACV 12-717 ABC (EX), 2014 WL 10384631, at *6 (C.D. Cal. Feb. 18, 2014) (quoting *NEC Elecs. Inc. v. Hurt,* 208 Cal. App. 3d 772, 781 (1989)). "The real issue is not whether [Chandra] actually litigated the issue of [Pop Top's] liability, but rather whether [Chandra] had an opportunity to present a defense." *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 150 (1984).

Here, Chandra is the sole officer and director of Pop Top, with complete and sole decision-making authority and control of Pop Top's affairs. Chandra Dep. 283 ("I am the only person who's the decision-maker at Pop Top."). Chandra personally assigned the '623 patent to Pop Top shortly before initiating this litigation and personally retained counsel to represent both himself and Pop Top for purposes of "assertion and monetization of" his patent portfolio, including the '623 patent at issue in this litigation. *Id.* at 71-73, 124; Dep. Ex. 9. Chandra was the

9

1   only person communicating with Pop Top's counsel during the litigation. *Id*. at 137, 237-38.[3]

2   Pop Top does not dispute that Chandra spearheaded the underlying litigation, reviewed the

3   pleadings, and had authority to control the course of the litigation. *See id*. at 136-37. The court

4   concludes that Chandra has had ample opportunity to litigate this case. Adding Chandra as a

5   judgment debtor thus comports with due process. *See Carlson Produce*, 2022 WL 2905157, at *6

6   (finding alter ego controlled the litigation where he and the corporation were represented by the

7   same attorney, he answered the complaint, was properly served with papers pertaining to the case,

8   and assumed responsibility in finding new counsel for the corporation).

9       In sum, the court recommends that Kobo's motion to amend the judgment to add Rohit

10  Chandra as a judgment debtor be granted.

**B.   Contempt**

**1. Legal Standard**

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "Civil contempt is characterized by the court's desire to compel obedience to a court order . . . or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) (citations omitted). "The contempt 'need not be willful.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting *In re Dual-Deck*, 10 F.3d at 695 (quotation omitted)). "[C]ivil contempt 'may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.

---

[3] Pop Top's counsel, Matthew Wawrzyn and Todd Atkins, moved to withdraw from representing Pop Top in May 2023. [Docket No. 93.] Chandra filed an opposition to the motion to withdraw on Pop Top's behalf, arguing that "[Wawrzyn] should be allowed to withdraw, on the condition that [he] be ordered to pay for substitute Counsel[.]" [Docket No. 98.] The court denied the motion without prejudice in June 2023. [Docket No. 100.] It also ordered Pop Top to retain counsel by no later than July 10, 2023. *Id*.; *see* Civ. L.R. 3-9(b) ("[a] corporation . . . may appear only through a member of the bar of this Court."). Pop Top did not retain new counsel. Wawrzyn and Atkins filed a renewed motion to withdraw in January 2024 to which Pop Top/Chandra did not respond. [Docket No. 114.] That motion remains pending because this court determined it is a decision best left to the district judge to whom this case is reassigned.

Neither a jury trial nor proof beyond a reasonable doubt is required.'" *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994)).

A "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *Cetacean*, 774 F.3d at 945 (quoting *In re Dual-Deck*, 10 F.3d at 695). Once the moving party makes its initial showing, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply," *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999), and the alleged contemnors must show that they "performed 'all reasonable steps within their power to insure compliance' with the court's orders." *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th Cir. 1976)).

"An order to a corporation binds those who are legally responsible for the conduct of its affairs." *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988). "Accordingly, a non-party can be held in civil contempt for a corporate defendant's violations of a court order where (1) the non-party either aids and abets the defendant in violating the court order or is legally identified with the defendant, and (2) the non-party has notice of the court order." *Vasquez v. Libre by Nexus, Inc.*, No. 17-CV-00755 CW, 2023 WL 360242, at *8 (N.D. Cal. Jan. 23, 2023) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998)).

If the court holds the party in civil contempt, it should impose "the minimum sanction necessary to obtain compliance is to be imposed," as "civil sanctions are wholly remedial." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). The order "must be accompanied by a 'purge' condition, meaning, it must give the contemnor an opportunity to comply with the order before payment of the fine or other sanction becomes due." *Martinez v. City of Pittsburg*, No. C11-01017-SBA, 2012 WL 699462, at *3 (N.D. Cal. Mar. 1, 2012) (citations omitted). 28 U.S.C. § 636(e) "requires a magistrate to refer contempt charges to a district court judge" if the parties have not consented to jurisdiction before a magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991); *see* 28 U.S.C. § 636(e)(3)-(4).

11

### 2. Discussion

Kobo asks the court to hold Pop Top and Chandra in civil contempt for their failure to comply with the March 2022 Order to pay Kobo $274,721.43 in attorneys' fees within 30 days. As a sanction, Kobo asks the court to hold Chandra liable for the full amount awarded to Kobo. Mot. 9. In light of the court's recommendation that Kobo's motion to amend the judgment to add Chandra as a judgment debtor be granted, the court recommends that Kobo's contempt motion be denied without prejudice as moot.

### III. MOTION TO ASSIGN PATENTS

Kobo moves to assign Chandra's patents to Kobo in partial satisfaction of the March 2022 Order. Chandra owns 24 patents and pending applications, 14 of which are currently active. Chandra assigned two patents to Pop Top, the '623 patent and U.S. Patent No. 10,866,713 ("the '713 patent"). [Docket No. 108-1 (Rosenfeld Decl. Dec. 7, 2023) ¶ 13.] The remaining patents are held by Chandra in his own name. *Id*. at ¶¶ 13-17. According to Mitchell Rosenfeld, who assessed Chandra's patents on behalf of Kobo, all of the active patents "generally claim highlighting of content and/or serving of code to a user for content selection." *Id*. at ¶ 14. He states that the patent transaction market would consider all 24 patents as belonging to a single patent family, which he defines as "a collection of patent applications covering the same or similar technical content." *Id*. at ¶¶ 15, 17. Generally, patent families are sold together and not split. *Id*. at ¶ 16. Splitting a patent family has a "negative impact on the potential market value." *Id*. at ¶ 45.

According to Chandra, Pop Top has no resources or assets to satisfy the March 2022 Order other than the two patents he assigned Pop Top. Therefore, Kobo asks the court to direct Pop Top and Chandra to assign the Pop Top patents to Kobo in partial satisfaction of the March 2022 Order, and because the patent family should not be split, it asks the court to direct Chandra and Pop Top to assign all 24 patents. Mot. 4. The potential market value for the two Pop Top patents is between $25,000-$50,000. The potential market value for all 24 patents is between $50,000-$100,000. *Id*. at ¶¶ 44, 45. In the alternative, Kobo asks the court to appoint a receiver to dispose of the patents in satisfaction of the March 2022 Order. Mot. 5.

1 Under California Code of Civil Procedure section 695.010, "all property of the judgment debtor is subject to enforcement of a money judgment, including intangible property such as patents and copyrights." *Sleepy Hollow Inv. Co. No. 2 v. Prototek, Inc.*, No. C 03-4792 MMC (MEJ), 2006 WL 279349, at *1 (N.D. Cal. Feb. 3, 2006), *modified on reconsideration,* No. C03-4792 MMC (MEJ), 2007 WL 2701318 (N.D. Cal. Sept. 13, 2007) (citations omitted). "The proper procedure to execute on a patent is to obtain an order of the court directing the patent holder to assign the patent." *Id*. The court may authorize a court officer to execute the assignment, which will be binding on the patentee. *Id*. California law also authorizes appointment of a receiver to enforce a judgment "where a writ of execution would not reach certain property and other remedies appear inadequate." *See Yufa v. TSI Inc.*, No. 4:09-CV-01315-KAW, 2018 WL 3956489, at *3 (N.D. Cal. Aug. 17, 2018) (discussing Cal. Civ. Proc. Code § 708.620).

The court recommends that Kobo's motion to assign patents be denied without prejudice as premature. If the district court adopts the court's recommendation that Chandra be added as a judgment debtor, Kobo may seek full satisfaction of the March 2022 Order from Chandra. If Kobo is ultimately unable to collect the full amount of the attorneys' fees awarded from Chandra, it may eventually pursue assignment of his patents.

### IV. DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED

Finally, Kobo filed an administrative motion to consider whether another party's material should be sealed, asking to seal the entire transcript of Chandra's deposition and the exhibits thereto in their entirety on the ground that the materials contain information designated as confidential by Pop Top, as well as references to the deposition transcript in its motion to amend the judgment and hold Pop Top and Chandra in contempt. [Docket No. 106.] As the party that designated the materials as confidential, Pop Top bears the burden of establishing that they are sealable. *See* Civ. L.R. 79-5(f)(3), 79-5(c)(1). Pop Top did not file a responsive statement and/or declaration as required by Civil Local Rules 79-5(f)(3) and 79-5(c)(1). Accordingly, on March 14, 2024, the court ordered Pop Top to file either a responsive statement and/or declaration or a statement of non-opposition to the motion to seal. [Docket No. 117.] The court noted that "the

vast majority of the materials at issue likely do not meet the applicable legal standard for sealing." It also explained that "pursuant to Rule 79-5(a), '[a] party must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents (as opposed to merely redacting the truly sensitive information in a document).'" *Id*.

Chandra filed a response in which he states "[t]he transcript contains highly sensitive personal, and financial information about [Chandra], his personal life, his personal finances, banking information, income, assets, personal properties, intellectual property, and business dealings" and that this information is protected under his "constitutional right to privacy under California law." [Docket No. 120.] He also contends that the transcript contains "highly sensitive and confidential information about the trade secrets, business, secrets, financial records of Pop Top" and "information considered highly confidential and sensitive by other entities." *Id*. at 2. According to Chandra, there is no alternative to sealing the transcript. *Id*.

The Ninth Circuit established standards governing requests to seal in *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Where, as here, a party seeks to seal judicial records filed in connection with a dispositive motion, a "compelling reasons" standard applies. *Id*. at 1179. This standard derives from the common law right "to inspect and copy public records and documents, including judicial records and documents." *Id*. at 1178 (citation and internal quotation marks omitted). To limit this common law right of access, a party seeking to seal judicial records must show that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Id*. at 1178-79 (citations and internal quotation marks omitted). "[A] 'good cause' showing alone will not suffice to fulfill the 'compelling reasons' standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments." *Id*. at 1180. As the court in *Kamakana* stated:

> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public

14

> scandal, circulate libelous statements, or release trade secrets. . . . The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.

*Id*. at 1179 (quotation marks omitted) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Chandra's response to the motion to seal does not satisfy the "compelling reasons" standard. It also does not comply with Local Rule 79-5(a), which provide that "[a] party must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents (as opposed to merely redacting the truly sensitive information in a document)." Civ. L.R. 79-5(a). Nonetheless, compelling reasons support redacting sensitive financial information such as bank account numbers. *See, e.g*., Fed. R. Civ. P. 5.2(a)(4) (authorizing the filing of only the last four digits of financial account numbers). Accordingly, **by no later than April 8, 2024, Pop Top's counsel shall submit a redacted version of Exhibit 21 to Chandra's deposition transcript**, which consists of Wells Fargo bank statements. With the exception of the last four digits of the bank account numbers, counsel shall redact all bank account numbers in the bank statements in Exhibit 21. Kobo's administrative motion to consider whether another party's material should be sealed is otherwise denied. By no later than April 8, 2024, Kobo shall file unredacted versions of its motion to amend the judgment and hold Pop Top and Chandra in contempt as well as Chandra's deposition transcript and all exhibits thereto, other than Exhibit 21.

## V.     CONCLUSION

For the foregoing reasons, the court recommends that Kobo's motion to amend the judgment to add Chandra as a judgment debtor be granted. The court further recommends that Kobo's motion court to hold Pop Top and Chandra in civil contempt be denied as moot and that Kobo's motion to assign Chandra's patents be denied without prejudice. Kobo's administrative motion to consider whether another party's material should be sealed is granted in part and denied in part.

Any party may file objections to this report and recommendation with the District Judge

within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: April 2, 2024



Donna M. Ryu
Chief Magistrate Judge